### KUNZIE v LEEDS, INC.

Ohio Appeals, 1st Dist, Hamilton Co

No 5930. Decided Feb 28, 1941

Leo A. Burke, Cincinnati, for appellant.

A. A. Rendigs, Cincinnati, for appellee.

### OPINION

By MATTHEWS, PJ.

The trial court sustained the motion of the defendant for an instructed verdict, overruled the plaintiff's motion for a new trial and entered judgment on the verdict. It is from that judgment that this appeal was taken.

The action was for damages on account of personal injuries. The plaintiff died during the pendency of the action and the action was revived in the name of her administrator.

In her petition, the plaintiff alleged that on the 11th day of September, 1936, she was a passenger in an elevator operated by the defendants in its store, where she had gone on defendant's invitation, that through the negligence of the defendant the elevator "dropped suddenly, and then came to an abrupt stop between floors, severely jolting and jarring plaintiff", that she "suffered internal injuries by reason of the falls she sustained, and that her injuries

were the direct result of the carelessness and negligence of the defendant in not maintaining said elevator in a safe condition."

The defendant in its answer admitted that it maintained and operated the elevator and that the plaintiff was a passenger in it when it stopped between floors.

The defendant denied specifically and generally all other allegations.

In explanation of the stopping of the elevator between floors, making it necessary to remove the passengers by means of a step ladder, it appeared in evidence and in the opening statement of counsel that one of the cables crystallized in the socket and then broke, thereby permitting the elevator to fall or start down which set in motion a safety device or brake which stopped the downward movement.

It was not claimed that the plaintiff suffered an external injury. Her claim was that she suffered internal injuries. The cause of her death was myocarditis.

The defendant claims that there is no evidence that she suffered any injury at the time the elevator stopped and also that there is no evidence that the elevator came to an abrupt stop, by reason of which she suffered any injury, either external or internal.

The trial court based his ruling on the ground that "there must be some unusual happening of a violent nature" and concluded that there was a dearth of evidence of any such happening.

Counsel have argued the legal issue of whether the doctrine of res ipsa loquitur applies to this case. We are of the opinion that an extended discussion of that issue is not needed. The defendant was in exclusive control of the elevator. What happened was unusual. For some reason, the operator lost control. The elevator, contrary to his volition started down. The safety device or brake provided for such an emergency functioned and stopped it. That happening called for explanation from the defendant, if by reason thereof sufficient force was developed as to directly result in physical injury to the plaintiff. Until those two elements

concurred, no possible right of the plaintiff was invaded by the unexplained occurrence. But when substantial evidence of the presence of those elements was introduced, █ the doctrine of res ipsa loquitur operated to take the case to the jury on the issue of negligence. We are, therefore, of the opinion that the trial court was right in stating the problem before him. Our problem is to determine whether, in our view, he was right in concluding that there was no substantial evidence of an abrupt stop of such force as to cause, and causing injury to the plaintiff.

A witness who was in the store at the time of this occurrence testified: "I heard a noise, it wasn't so terrible loud, but I knew something was wrong; I went to the elevator and it was caught then, between the floors." He said he saw the plaintiff just after she left the elevator and that "she was sort of hysterical and was crying."

The plaintiff's daughter was waiting for her at another store and when she joined her "she was very nervous and very pale; we were to have gone and got a pair of shoes but she didn't feel like it so we had to go home."

There was ample evidence that the plaintiff was in good health immediately before this occurrence and that her health declined from that time until her death.

The plaintiff consulted her physician eighteen days after this incident and he was a witness. He testified that he "found her condition to be one of extreme pain in the upper abdomen" and that his diagnosis was "That there had been an injury to the tissues in the upper abdomen which was causing this extreme pain." He also testified that "She gave me the history of having had an injury and fall with an elevator. She was riding on an elevator, so she told me, and the sudden stop of the elevator caused her to get a severe jar which caused her to have severe pain in the upper abdomen."

The case of **Dugan v Industrial Commission, 135 Oh St 652,** decided that

what a patient said to his physician as to the cause of an injury was incompetent. As we construe that opinion, the statement by the patient that she had suffered an injury is competent as a part of the data necessary in order that the physician might make a correct diagnosis of the patient's condition, and prescribe the proper remedy. We were confronted with a similar situation in **Kellogg v Industrial Commission, 60 Oh Ap 22**, and believe the reasoning in that case applicable to the facts in this case. While we are of the opinion that it was not competent for the physician to testify that his patient had told him that she had been injured in the fall of an elevator. it was competent for him to state that she had told him that she had been injured.

We have here evidence of an unusual happening. The instrumentality—the elevator—was in the exclusive possession of the defendant. There was an unusual happening or movement of the elevator. The plaintiff as a passenger was in a position to be affected by that unusual movement. She was seen in an hysterical condition immediately thereafter. She was crying. She was nervous and pale. She went to her physician for treatment and told him that she had received an injury. She had been in good health just before the occurrence.

Would a jury be entirely unreasonable in concluding that the elevator came to a stop with such violence that it injured the plaintiff's abdominal tissues under such circumstances? Unless it would, the motion for an instructed verdict should have been overruled.

It is true that there is no direct evidence as to the exact manner of the stopping of the elevator. No witness told of the abruptness of the stopping, or the force that would be exerted upon a passenger thereby. But if it is true that the plaintiff was in normal health at the time. and if it be true that her abdominal tissues were injured by the stopping, it certainly would be an issue for the jury to determine whether the defendant was negligent in the manner of bringing the elevator to a stop. And when we accept as true that the plaintiff had been in good health before, and that her abdominal tissues were in-injured by the stopping of the elevator. that certainly is evidence that the stopping of the elevator exerted great force upon the passenger.

By this process we reach the conclusion that there was substantial evidence, although circumstantial, that there was an abrupt and violent stopping of the elevator which caused injury to the plaintiff.

We are therefore, of the opinion that the court erred in sustaining the motion for an instructed verdict.

The judgment is reversed and the cause remanded for further proceedings according to law.

HAMILTON, J., concurs.
ROSS, J., dissents in separate memorandum.

ROSS, J., dissenting:

My view of the record causes me to conclude that there was no substantial evidence that the unusual operation of the elevator was the direct proximate cause of any injury which the plaintiff's decedent may have suffered.

The elevator did stop between floors. Whether it came to a violent stop or not is not clear. The plaintiff's decedent did not consult a physician until eighteen days after the incident of which complaint is made. I agree with the majority opinion that the statement to the physician as to how and where she was injured is incompetent under the rule in **Dugan v Industrial Commission, 135 Oh St 652**. This reduces the evidence before the trial court and leaves little, if any evidence showing the cause of the injuries claimed to have been received.

It is my conclusion that the trial court was required under the circumstances to instruct a verdict for the defendant.